IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENN DEPRETIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY | : | NO. 20-2193 |

## MEMORANDUM

**Padova, J.**                                                          April 14, 2021

Plaintiff has brought this action for underinsured motorist benefits against his automobile

insurance company, State Farm Mutual Automobile Insurance Company ("State Farm").  The

Complaint asserts one claim for breach of contract, which alleges that State Farm has breached its

obligation  to provide underinsured motorist coverage under Plaintiff's insurance policy related to

a motor vehicle accident that occurred on January 23, 2017 (Count I).[1]  State Farm moves for

summary judgment as to this claim to the extent that Plaintiff seeks to recover nonmonetary

damages on the ground that Plaintiff selected the "Limited Tort" Option when he purchased his

automobile insurance.  For the reasons that follow, we deny the Motion.

## I.       FACTUAL BACKGROUND

On August 29, 2015, Plaintiff purchased an automobile insurance policy (the "Policy")

from State Farm, which Policy was in effect on January 23, 2017.  (See State Farm Ex. B, Docket

No. 22 at 38-39 of 91.)  When Plaintiff purchased the Policy, he selected the "Limited Tort"

Option, which states that "[u]nder this form of insurance, you . . . may seek recovery for all medical

---

[1] The parties stipulated to the dismissal without prejudice of Count II of the Complaint, which asserted a bad faith claim against State Farm.  We entered that Stipulation on the Docket of this action on September 10, 2020.  (See Docket No. 15.)

and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury' as set forth in the policy . . . ." (Id. at 39 of 91.)

On January 23, 2017, Plaintiff was involved in a motor vehicle accident while he was stopped at the intersection of Bradfield Road and Easton Road in Glenside, Pennsylvania. (Joint Statement of Material Facts ¶¶ 5-6.) Plaintiff's vehicle was rear-ended by another vehicle. (Pl.'s Dep. at 64.) Even though Plaintiff was wearing a seat belt, the impact of the collision caused him to lunge forward in his seat. (Id. at 69.) He did not hit anything inside the vehicle and the airbag did not deploy. (Id. at 69-70.) The rear bumper of his vehicle was dented as a result of the collision. (Id. at 74.) He did not have the dent repaired. (Id. at 85-86.) USAA, which insured the vehicle that struck Plaintiff's vehicle, settled Plaintiff's claim for $15,000. (State Farm Ex. D, Docket No. 22 at 68-70 of 91.)

Plaintiff testified at his deposition that the January 23, 2017 accident aggravated pre-existing injuries that he had to his neck and shoulders. (Pl.'s Dep. at 63, 80.) Plaintiff suffered his first injury to his neck and left shoulder when a tree limb that was being trimmed fell on him while he was working as a mail carrier in 2013. (Id. at 44-45.) He suffered soreness and crunching in his neck, as well as difficulty with certain positions and mobility. (Id. at 45.) He was treated by his family doctor and also had physical therapy. (Id. at 46.) He continued to experience intermittent grinding, crunching, and pain, as well as numbness in his shoulder and loss of mobility after he completed his physical therapy. (Id. at 49-50.) He was not able to return to his job as a mail carrier after this injury because he was unable to lift totes of mail. (Id. at 47, 49.)

Plaintiff suffered additional injuries in a January 14, 2015 motor vehicle accident. (Id. at 119-20; Pl.'s Ex. A, Docket No. 23-1 at 3 of 6.) At the time of this motor vehicle accident, Plaintiff

was driving a shuttle bus for Bucks-Mont Transportation that was rear-ended by a SEPTA bus in Philadelphia. (Pl.'s Dep. at 119-20, 123.) As a result of this motor vehicle accident, Plaintiff suffered additional injuries to his neck and left shoulder and was diagnosed with cervical osteoarthritis and carpal tunnel syndrome. (Pl.'s Ex. A at 3 of 6.)

On August 18, 2016, approximately five months prior to the January 23, 2017 accident, Plaintiff had his annual appointment with his primary care physician, Dr. Peter Giammanco. (State Farm Ex. F, Docket No. 22 at 74 of 91.) Dr. Giammanco noted that Plaintiff continued to have neck and left shoulder pain at that time. (Id.) During that appointment, Dr. Giammanco found that Plaintiff was "[p]ositive for arthraglias, back pain, gait problem, joint swelling, myalgias, neck pain and neck stiffness." (Id.) He was also experiencing numbness, headaches, and sleep disturbance. (Id.) Plaintiff "exhibit[ed] decreased range of motion and tenderness" in his left shoulder, as well as "tenderness, pain and spasm" in his cervical back. (Id. at 75 of 91.)

Plaintiff maintains that the January 23, 2017 accident caused the pain in his neck and shoulder to worsen. (Pl.'s Dep. at 80.) He has also experienced inflammation, tenderness, further decreased mobility, and more frequent numbness in his left arm, reaching to his fingertips, as a result of the January 23, 2017 accident. (Id. at 81-82.) He sometimes has the sensation of numbness traveling down his right arm as well. (Id. at 82.) Plaintiff also experiences grinding and clicking in his neck. (Id. at 83.) Plaintiff asserts that he rarely had numbness that traveled all the way down his right arm to his fingertips prior to the January 23, 2017 accident. (Id. at 83-84.)

State Farm asks that we enter summary judgment in its favor with respect to Plaintiff's claims for nonmonetary damages on the ground that Plaintiff's physical injuries arising from the January 23, 2017 motor vehicle accident comprise no more than exacerbations of previous injuries

and are not sufficiently serious to warrant the serious injury exception to the "Limited Tort" Option.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. (citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by:  (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s]

summary judgment." <u>Lamont v. New Jersey</u>, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007)).

## III.   DISCUSSION

### A.   The Limited Tort Option

State Farm argues that it is entitled to summary judgment as to Plaintiff's claim for nonmonetary damages because he chose, and is bound by, the "Limited Tort" Option in the Policy. As we discussed above, the "Limited Tort" Option in the Policy provides that "[u]nder this form of insurance, you . . . may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury' as set forth in the policy . . . ." (State Farm Ex. B. at 39 of 91.)  "The limited tort alternative is subject to a host of exceptions.  In a variety of situations, most notably the 'serious injury' exception, the insured bound by the limited tort election retains *full* tort election rights." <u>Donnelly v. Bauer</u>, 683 A.2d 1242, 1243 n.3 (Pa. Super. Ct. 1996), <u>aff'd</u> 720 A.2d 447 (Pa. 1998).  "Serious injury" is defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa. Cons. Stat. Ann. § 1702. The Pennsylvania Supreme Court "has held that in determining whether a motorist has suffered a serious injury, 'the threshold determination was not to be made routinely by a trial court judge . . . but rather was to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained.'" <u>Cadena v. Latch</u>, 78 A.3d 636, 640 (Pa. Super. Ct. 2013) (alteration in original) (quoting <u>Washington v. Baxter</u>, 719 A.2d 733, 740 (Pa. 1998)).  "In conducting this inquiry, '[s]everal factors must be considered to determine if the claimed injury is "serious":  [1] the extent of the impairment, [2] the length of time the impairment lasted, [3] the treatment required to correct the impairment, and [4] any other relevant factors.'" <u>Id.</u> (alteration

in original) (quoting <u>Graham v. Campo</u>, 990 A.2d 9, 16 (Pa. Super. Ct. 2010)).  The Pennsylvania

Supreme Court "has cautioned that '[t]he focus of these inquiries is not on the injuries themselves,

but on how the injuries affected a particular body function.'" <u>Id.</u> (alteration in original) (quoting

<u>Washington</u>, 719 A.2d at 740).  "We remain cognizant of the principle that '[a]n impairment need

not be permanent to be serious[ ]' under section 1705(d)." <u>Id.</u> (alterations in original) (quoting

<u>Robinson v. Upole</u>, 750 A.2d 339, 342 (Pa. Super. Ct. 2000)).

      B.    <u>Plaintiff's Injuries</u>

    State Farm argues it is entitled to summary judgment because Plaintiff has failed to produce

any evidence that he suffered a "serious impairment of body function" as a result of the January

23, 2017 accident.  State Farm maintains that, at best, Plaintiff has shown that he suffered a minor

aggravation of the preexisting injuries to his neck and shoulder.  As we discussed above, the record

evidence demonstrates that Plaintiff suffered injuries to his neck and shoulders in 2013 and 2015.

(<u>See</u> Pl.'s Dep. at 43-44, 119-20; Pl.'s Ex. A at 3 of 6.)  While Plaintiff testified at his deposition

that the January 23, 2017 accident aggravated the previous injuries to his neck and shoulder, State

Farm maintains that his testimony is belied by his medical records from his primary care physician,

which show that he was suffering the same impairments shortly before the accident.  (<u>See</u> State

Farm Ex. F at 74-75 of 91.)  As we noted above, those medical records show that, on August 18,

2016, five months before the accident, Dr. Giammanco recorded that Plaintiff was positive for

"back pain . . . joint swelling . . . neck pain and neck stiffness" as well as "numbness and

headaches" and "sleep disturbances."  (<u>Id.</u> at 74 of 91.)  State Farm also points out that Plaintiff

admitted during his deposition that he suffered tenderness, numbness, and stiffness in his neck,

shoulders and left arm before the January 23, 2017 accident.  (Pl.'s Dep. at 63, 81, 83.)  State Farm

further points to Plaintiff's deposition testimony, in which he stated that his body did not hit

anything in his vehicle as a result of the January 23, 2017 accident, his airbags did not deploy, and he did not lose consciousness.  (<u>Id.</u> at 69-70.)  State Farm further relies on the absence of evidence showing that there was serious damage to Plaintiff's vehicle as supporting its argument that Plaintiff did not suffer "serious impairment of bodily function" as a result of the January 23, 2017 accident. Specifically, State Farm notes that the only damage to Plaintiff's vehicle was a dent in the rear bumper that Plaintiff did not have repaired.  (<u>Id.</u> at 74, 85-86.)  State Farm also asks that we draw an adverse inference from Plaintiff's failure to produce photographs of the current state of his vehicle that State Farm requested in discovery.  While Plaintiff does not agree that State Farm is entitled to the adverse inference, he does not dispute his failure to provide either the requested discovery or the reason for this failure.  (<u>See</u> Pl.'s Mem. at 2, 6.)  Accordingly, we draw the inference that Plaintiff's vehicle did not sustain serious damage as a result of the January 23, 2017 collision.  <u>See</u> <u>Layden v. Target Corp</u>, 768 F. App'x 152, 156 (3d Cir. 2019) ("For an adverse inference to be drawn, 'it must appear that there has been an actual suppression or withholding of the evidence.'" (quoting <u>Gumbs v. Int'l Harvester, Inc.</u>, 718 F.2d 88, 96 (3d Cir. 1983))).

State Farm further relies on an independent medical examination ("IME") performed by Dr. Leonard A. Brody.  (State Farm Ex. H, Docket No. 22 at 81 of 91.)  Dr. Brody examined Plaintiff on November 25, 2020, nearly four years after the January 23, 2017 accident.  Dr. Brody's report states that Plaintiff had a "[n]ormal examination of the left shoulder" and a "[n]ormal examination of the cervical spine with no evidence of cervical radiculopathy."  (<u>Id.</u> at 84 of 91.) Dr. Brody further stated in his report that:

> it is certainly possible that [Plaintiff] may have suffered some soft tissue sprains and strains to the left shoulder/left cervical spine area at the time of the 1/23/17 incident.  Injuries such as these typically resolve in a period of four to six to eight weeks after such an incident, and there is nothing in the medical records to indicate why that would not be the situation in this case.

(Id. at 85 of 91.)  Dr. Brody concluded, based on his examination of Plaintiff, that Plaintiff "has completely recovered from any injuries that he may have suffered at the time of the 1/23/17 motor vehicle accident in question."  (Id.)

Plaintiff, however, maintains that there is medical evidence on the record that creates a genuine issue of material fact regarding whether he suffered a serious injury and, accordingly, that the question of whether the serious injury exception to the limited tort election applies in this case should be left to a jury.  See Cadena, 78 A.3d at 640.  Plaintiff relies on the IME prepared by Dr. A. Lee Osterman, who examined Plaintiff on January 11, 2021.  (Pl.'s Ex. A.)  Dr. Osterman notes in his IME report that Plaintiff reported the following symptoms during his examination:  "constant nagging pains of his left ear/neck area, into his upper shoulder girdle radiating down into the triceps and distally into the hand[,] . . . difficulty with sleeping[,] . . . some pain with lifting[,] . . . numbness and tingling in both extremities, left much more so than right and particularly in the median distribution."  (Id. at 2 of 6.)  Plaintiff also told Dr. Osterman that his "numbness and tingling and pain will wake him up at night[,]" that he has "difficulty using his computer for extended periods of time secondary to numbness[,]" and that his "peripheral nerve symptoms seem worse after the third incident."  (Id. at 2-3 of 6.)  Dr. Osterman found that Plaintiff has the following conditions: "1. Cervical disc disease aggravated by multiple injuries.  2.  Peripheral nerve irritation particularly at the median nerve left and ulnar nerve left.  3.  Mass triceps representing partial triceps avulsion or intramuscular lipoma."  (Id. at 5 of 6.)  Dr. Osterman reached the following conclusions:

> There is no question that this gentleman had pre-existent problems prior to January 23, 2017.  These were documented.  These pre-existent conditions, however, render him more vulnerable to aggravation of the problem given the motor vehicle accident of January 23, 2017.  As a result of that accident, based on his description of symptoms and findings on today's examination, I believe he did have a significant exacerbation of his cervical spine, discogenic changes and sprain from which he still has residuals related to all three incidences.

Our examination [sic], his shoulder is not benign.  He has findings consistent with mechanical findings in his shoulder.  I would therefore disagree with Dr. Brody that he has a normal spine and normal shoulder examination.  His shoulder bothers him, but not as much as his neck or his numbness. . . .

One thing which seems to have worsened significantly compared to the neck and shoulder complaints is numbness and tingling in the hand.  He fees this has worsened and is interfering with his current vocational and avocational activities. . . .

Finally, he has a large mass in the posterior triceps area, which is consistent with either a partial triceps avulsion or an intramuscular lipoma. . . .

As noted above, I would disagree with the assessment of Dr. Brody on November 25, 2020, and the body of the report shows my different conclusions.

(Id.)  Dr. Osterman recommended that Plaintiff have an MRI to evaluate the mass in his left posterior triceps area and "electrical studies to see whether there is worsening either at the cervical spine in terms of radiculopathy, ulnar or median neuropathy" to determine "what degree of nerve irritation has occurred as an aggravation of the motor vehicle accident of January 23, 2017."  (Id.)  Dr. Osterman also noted that Dr. Brody's IME report did not mention the mass in Plaintiff's left triceps or findings regarding peripheral nerve irritation.  (Id.)

According to Dr. Osterman's IME report, Plaintiff suffered aggravations to the previous injuries to his neck and left shoulder/arm as a result of the January 23, 2017 accident.  Dr. Osterman stated that the "significant exacerbation of [Plaintiff's] cervical spine, discogenic changes and sprain" caused by Plaintiff's January 23, 2017 accident, were still causing Plaintiff problems on January 11, 2021, nearly four years after the accident.  (Id.)  We find that Plaintiff has pointed to evidence that establishes that he suffered impairments to his neck and left shoulder/arm resulting from the January 23, 2017 accident, that these impairments have lasted approximately four years, and that Plaintiff requires further diagnostic studies.  Having thus considered the Cadena factors, 78 A.3d at 640 (quoting Graham, 990 A.2d at 16), we conclude, based on Dr. Osterman's IME

report, and the other evidence of record, that Plaintiff has cited record evidence that shows the existence of a genuine issue of material fact regarding whether he suffered a "serious injury" to his neck, shoulder, and left arm as a result of the January 23, 2017 accident such that the serious injury exception to the limited tort election applies in this case.  See Donnelly, 683 A.2d at 1243 n.3.  Accordingly, we deny the Motion for Partial Summary Judgment.

## IV.    CONCLUSION

For the reasons stated above, we deny State Farm's "Motion for Partial Summary Judgment Regarding Limited Tort Threshold."  An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.